Gerardo Garcia MERAZ, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 982–86, 983–86.

Court of Criminal Appeals of Texas, En Banc.

Jan. 17, 1990.

Rehearing Denied March 7, 1990.

Joseph A. Calamia, El Paso, for appellant.

Steve W. Simmons, Dist. Atty., and Robert Dinsmoor, Asst. Dist. Atty., El Paso, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITIONS FOR DISCRETIONARY REVIEW

DUNCAN, Judge.

The appellant was convicted by a jury in one trial of two offenses: aggravated sexual assault and injury to a child. The jury assessed his punishment on the sexual assault offense at eighteen years in the Texas Department of Corrections and on the injury to a child at eight years in the Texas Department of Corrections.

Prior to his trial, the appellant claimed he was incompetent to stand trial. Art. 46.02, V.A.C.C.P. Accordingly, the trial judge impaneled a jury to resolve that issue. Art. 46.02, § 4(a), V.A.C.C.P. Obviously, this jury found the appellant competent to stand trial.

The appellant appealed his conviction to the Eighth Court of Appeals. The principal issue in his direct appeal was his assertion that the adverse resolution of his incompetency plea was against the great weight and preponderance of the evidence. Therefore, according to the appellant, he should not have been tried on the principal offenses. The court of appeals agreed with the appellant and reversed and remanded his conviction. *Meraz v. State*, 714 S.W.2d 108 (Tex.App.—El Paso 1986). In doing so, the court of appeals concluded that it had both a constitutional right and obligation to review the facts associated with an incompetency plea and resolve whether an adverse jury finding was against the great weight and preponderance of the evidence.

In their petitions for discretionary review the State claims that the court of appeals' decision in this case is in general conflict with this Court's opinions in *Van Guilder v. State*, 709 S.W.2d 178 (Tex.Cr.App.1985) and *Schuessler v. State*, 719 S.W.2d 320 (Tex.Cr.App.1986), and in express conflict with *Arnold v. State*, 719 S.W.2d 590 (Tex. Cr.App.1986). Accordingly, the State argues that the court of appeals cannot review the facts of a case and resolve whether a jury's decision is contrary to the great weight and preponderance of the evidence. We granted the State's petitions for discretionary review to again consider this issue and extract the courts of appeals from the quagmire they "are caught in [because of] a conflict between those holdings of the Court of Criminal Appeals [i.e., *Van Guilder v. State*, supra; *Schuessler v. State*, supra; and *Arnold v. State*, supra] and the legion of cases to the contrary by the Supreme Court of Texas." *Meraz v. State*, supra, 714 S.W.2d at 111.

Due to the nature of the issue to be reviewed, recounting the facts of the principal offense is unnecessary. However, it is appropriate to note the evidence that was presented in connection with the appellant's incompetency plea. As the court of appeals noted:

Dr. Salvador Aguirre, board certified psychiatrist and professor of psychiatry at the Texas Tech University College of Medicine, testified that, after several examinations of the Appellant and a review of his past medical records, Appellant had a diagnosis of a form of paranoid schizophrenia and, bearing in mind the definition of incompetency under Texas law, it was his opinion that Appellant was not competent and did not have a rational understanding of the proceedings against him. Furthermore, he gave a detailed analysis of the mental disease which Appellant was suffering from and the various hallucinations and symptomatology of the Appellant. Dr. Aguirre was of the further opinion that the Appellant was not faking his mental illness, and that his past medical history revealed that he had been suffering from paranoid schizophrenia since the time he

was of the age of fourteen years. Medical records introduced into evidence and considered by Dr. Aguirre in forming his opinion that the Appellant was incompetent were (1) medical psychiatric records from Thomason General Hospital wherein the Appellant was diagnosed as suffering from paranoid schizophrenia, (2) the psychiatric records of the Veterans' Administration, El Paso office, where the Appellant was diagnosed as a paranoid schizophrenic, (3) Veterans' Administration from Waco, Texas, the same diagnosis of paranoid schizophrenia, and (4) psychiatric records from the El Paso State Center where the Appellant was diagnosed as having paranoid schizophrenia. The records thus reveal that the Appellant had been committed several times, beginning around the age of fourteen years, with the diagnosis of paranoid schizophrenia with each commitment, to one of the medical facilities or mental hospitals. Dr. Aguirre further testified that the Appellant suffered from hallucinations, believed that the whole world was against him and people were trying to kill him, that he lived in a world of his own, and everything outside was harmful or potentially harmful to him, and in this case, he felt that the assistance of his lawyer was a very act that wanted to harm him. Dr. Aguirre had seen the patient more than a month before trial and saw him again briefly before the trial, and he was unequivocal in his opinion that the Appellant was incompetent as defined under Texas law and that he did not have a rational understanding of the proceedings against him.

Dr. Briones, a psychiatrist certified by the American Board of Neurology and Psychiatry, testified that he was the author of a certificate of mental examination of the Appellant which states that the Appellant has a mental disorder and requires observation, treatment and hospitalization. He testified to having made examinations of the Appellant and that at his request he was examined by a Dr. Johnson, a psychologist, and that Dr. Johnson had critical results regarding the Appellant's ability to communicate with a rational degree of understanding; that Dr. Johnson felt that he was incapable of participation on his own; that there was some question about how impaired he was and that for that reason he, Dr. Briones, spent a lot of time with him in regard to competency. He felt initially he was competent, but on the basis of more recent interviews he determined that he was not competent. Dr. Briones thought the Appellant was competent in December; in June, he thought he was not competent. At the time of this hearing on July 23, he was of the opinion that he was not, although he found him able to relate, to answer questions and participate in an interview, and that he knew he was in a courtroom but he still had some confusion about the hearing. The State called no witnesses, but relied on cross-examination which brought out the fact that the Appellant was in the Marine Corps for three years, possibly of the rank of lance corporal; that he completed his service term satisfactorily or at least received a normal discharge; that the Appellant's occupation was equipment operator and inferentially that an individual normally would have to be able to communicate and comprehend in order to perform satisfactorily at that job; and that the medical records which the doctors had examined were not formed for the specific purpose of competency but rather they dealt with the mental disease. The question was also raised as to whether the Appellant was faking his illness or attempting to magnify it, and one of the doctors testified that '[n]ow that I recall, he does mention he is trying to make his illness look more ridiculous than it is.' Dr. Aguirre said there is no psychiatric test which can be employed to determine whether an individual is giving fake responses, that psychologists have such a test but that it was not administered to the Appellant. Dr. Briones testified that on the day of the competency hearing Appellant was able to relate, answer questions and participate in the interview, and that he knew his lawyer.

The evidence in support of the jury findings can be extracted from the above to be that he knew who his lawyer was; he mentioned he was trying to make his illness look more ridiculous than it was; there might be incentive for persons facing charges to fake their results; there was no psychiatric test which could be employed to determine such faking; one of the doctors at one time thought the Appellant was competent; on the day of the competency trial Appellant was able to relate, answer questions and participate in an interview; he knew he was in a courtroom, that the Appellant was in the Marine Corps for three years and completed his service term satisfactorily or at least received a normal discharge; the Appellant's occupation was equipment operator and an individual normally would have to be able to communicate and comprehend in order to perform satisfactorily at that job.

*Id.* at 109–110.

It is also appropriate to note that the issue in this case has generated a substantial amount of discord between this Court and the various courts of appeals. The primary culprit in this larceny of confusion is one sentence in Art. V, § 6 of the Texas Constitution. The relevant sentence states: "Provided, that the decision of said courts [courts of appeals] shall be conclusive on all questions of fact brought before them on appeal or error." *Id.* Nearly a century ago, in *Choate v. San Antonio A.P. Ry. Co.*, 91 Tex. 406, 44 S.W. 69 (1898), the Texas Supreme Court analyzed this sentence and interpreted it as follows: "The purpose of that provision to amend section 6, art. 5, of the constitution . . . was not to enlarge their [courts of civil appeals] power over questions of fact, but to restrict, in express terms, the jurisdiction of the supreme court, and to confine it to questions of law.'" *Id.* 44 S.W. at 69. The Supreme Court's opinion observes that before Art. V, § 6, supra, was amended to read as it does today, the Supreme Court "had juris-

diction on appeal or a writ of error over the facts of a case but to this extent only; that, if the evidence was conflicting upon any material issue, it could sustain the verdict and affirm the judgment; or if, in their opinion, the verdict was against such a preponderance of the evidence as to justify such action, it could set it aside, and remand the cause for a new trial." *Id.* at 70.

Because of the constitutional amendment, this authority, in the Supreme Court's opinion, was conferred upon the courts of civil appeals "and not subject to be reviewed by this court." *Id.*

Since Art. V, § 6, supra, originated the courts of civil appeals [1] in 1891 and granted them jurisdiction to examine the facts of a case, the Texas Supreme Court has consistently and continually interpreted that language, as it did in *Choate v. San Antonio A.P. Ry. Co.*, to mean that the courts of civil appeals, and later the courts of appeals, had the power and responsibility to review the judgments in civil cases and determine whether they were supported by adequate evidence, including "great weight." Further, if the great weight and preponderance of the evidence did not support a judgment then the court of civil appeals was obligated to reverse the judgment and remand the case for a new trial. The Supreme Court has also consistently and continually conceded that it did not have the jurisdiction to make a similar review of the evidence. See *Choate v. San Antonio & A.P. Ry. Co.*, supra; *Hoven Camp v. Union Stockyards Co.*, 107 Tex. 421, 180 S.W. 225 (1915); *In Re Kings Estate*, 150 Tex. 662, 244 S.W.2d 660 (1952); *Banks v. Collins*, 152 Tex. 265, 257 S.W.2d 97 (1953); *Gulf, C. & S.F. Ry. Co. v. Deen*, 158 Tex. 466, 312 S.W.2d 933 (1958); *cert. denied* 358 U.S. 874, 79 S.Ct. 111, 3 L.Ed.2d 105; *Watson v. Prewitt*, 159 Tex. 305, 320 S.W.2d 815 (1959); *C.H. Leavell & Co. v. Vilbig Bros., Inc.*, 160 Tex. 600, 335 S.W.2d 211 (1960); *Hall v. Villarreal Development Corp.*, 522 S.W.2d 195

---

1. The Texas Constitution of 1876, created the original court of appeals. This court of appeals had both criminal and civil appeal jurisdiction. The constitutional amendments of 1891 in addi-

tion to changing the court of appeals to the courts of civil appeals also created the Court of Criminal Appeals. See Art. V, § 4, *Texas Constitution.*

(Tex.1975); *Pool v. Ford Motor Co.*, 715 S.W.2d 629 (Tex.1986); *Cropper v. Caterpillar Tractor Co.*, 754 S.W.2d 646 (Tex. 1988).

Shortly after the courts of appeals were given criminal appellate jurisdiction, the El Paso and San Antonio courts of appeals were confronted with an issue involving essentially the same issue present in this case. In those cases, however, it was the jury's resolution of an insanity defense adverse to the defendants. In both cases the courts of appeals, applying principles of law long applicable to the factual review in civil cases, reversed the convictions. In both *Van Guilder v. State*, supra, and *Schuessler v. State*, supra, the defendants raised the affirmative defense of insanity pursuant to *Tex. Penal Code*, § 8.01. As an affirmative defense the defendants had the burden of proof and the burden of persuasion. *Tex.Penal Code*, § 2.04. Thus, in order to prevail it was incumbent on the defendants to prove their insanity by a preponderance of the evidence. As noted, the respective courts of appeals reversed both convictions, concluding that the jury's resolution of the insanity defense adverse to the defendants was against the great weight and preponderance of the evidence. They reached this conclusion on the rather simple and then undisputed determination that under Art. V, § 6, supra, the intermediate appellate courts were vested with conclusive authority over questions of fact presented on appeal.

In *Van Guilder v. State*, supra, however, this Court disagreed with the court of appeals. Factually, the defendant in *Van Guilder* was charged with one murder and four attempted murders, all arising from the same incident. A jury convicted her of one attempted murder and acquitted her of the murder and the remaining attempted murders. The basis for the jury's acquittal was strangely and illogically an affirmative response to her plea of insanity. The court of appeals reversed her conviction on the basis that the defendant had proven her defense as a matter of law. Additionally, the court observed that the jury's verdict was against the great weight and preponderance of the evidence and this also would have been grounds for a reversal.

The State's petition for discretionary review was granted to review whether the court of appeals was correct regarding its observations concerning the appropriate standard of review it was authorized to perform. It is important to note that as an evidentiary matter the defendant offered the testimony of five medical experts who uniformly agreed the defendant was insane at the time of the offense. It is particularly important to note that the State offered no evidence to rebut the defendant's affirmative defense.

In its opinion, this Court observed that *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), established the analysis to be utilized by an appellate court when it reviews "the sufficiency of the evidence to support a criminal conviction...." *Van Guilder v. State*, 709 S.W.2d at 179. The Court interpreted the analysis as follows:

> In *Jackson*, supra, the Supreme Court required that all the evidence be viewed in the light most favorable to the verdict with the appellate court limiting its inquiry to whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. This is accomplished in the reviewing court by considering all the evidence in the case, resolving all conflicts and all reasonable inferences in favor of the verdict and then determining whether there is sufficient evidence to support the judicial action demanded.

*Id.*

The Court then noted the relevant language of Art. V, § 6, supra, but discounted its applicability by noting that Art. 1820 V.A.C.S. (now § 22.225, *Tex.Govt.Code*) states that "the judgment of the courts of appeal in *civil* cases shall be conclusive in all cases on the facts of the case." *Id.* at 180. The opinion then quoted a footnote from *Combs v. State*, 643 S.W.2d 709 (Tex. Cr.App.1982), that stated, "We perceive no other standard may be utilized by the Court of Appeals in reviewing criminal convictions other than the sufficiency of the

evidence to support the conviction." *Combs*, 643 S.W.2d at 716, fn. 1.

Then, the Court remarked that the issue to be resolved was not the sufficiency of the evidence to support the conviction, but in essence the adequacy of the proof of an affirmative defense (insanity) wherein the defendant statutorily has both the burden of proof and the burden of persuasion. Despite the profound theoretical and practical differences in these matters the Court created a modified version of the analysis developed in *Jackson v. Virginia*, supra, and made it applicable to the appellate review of the proof of affirmative defenses. The standard was identified as follows:

> Therefore, we hold that in reviewing a case involving an affirmative defense, the court of appeals must review the evidence of the affirmative defense by looking at the evidence in the light most favorable to the implicit finding by the jury with respect to such affirmative defense and then determine, by examining all the evidence concerning the affirmative defense, if any rational trier of fact could have found that the defendant failed to prove his defense by a preponderance of the evidence. The court of appeals is limited in its review using this preponderance standard to evidence submitted on the issue of the affirmative defense in question. This review is called for when the defendant is contesting the sufficiency of the evidence to support his conviction because of his assertion that he adequately proved his affirmative defense.

*Van Guilder*, 709 S.W.2d at 181.

The facts in *Van Guilder* were then compared to those in *Madrid v. State*, 595 S.W.2d 106 (Tex.Cr.App.1979). The Court observed that in *Madrid* "there was competent evidence on both sides of the insanity issue." *Id.* at 182. Because of the foregoing standard of review, when that occurs, the Court notes, that "it is much more difficult in reviewing a case to find that the jury acted irrationally." *Id.* Recognizing that there was no evidence to rebut the defendant's insanity defense, the Court in *Van Guilder* concluded that "no rational trier of fact could have found that appellant failed to prove her affirmative defense by a preponderance of the evidence." *Id.* at 183. The Court affirmed the judgment of the court of appeals, which resulted in the defendant's acquittal.

Implicit in the Court's opinion in *Van Guilder* is the inescapable conclusion that if there is any evidence presented to rebut the insanity defense then the "implicit jury holding that appellant did not prove, by a preponderance of the evidence, that she was insane at the time of the offense," can never be deemed irrational. *Id.* at 182. This inference was confirmed and given substance in *Schuessler v. State*, 719 S.W.2d 320 (Tex.Cr.App.1988). In *Schuessler* the defendant was charged with murdering his young daughter. The jury rejected his insanity defense despite several mental health experts testifying he was insane. The Court conceded "that the State presented 'no evidence of sanity.'" *Id.* at 328. However, the State did present one expert who testified he could not state whether the defendant was or was not insane at the time of the offense. The Court viewed this testimony as evidence rebutting the evidence that the defendant was insane. Therefore, concluding that there was some conflicting evidence, the court of appeals' opinion that the jury's verdict was against the great weight and preponderance of the evidence was reversed. Instead, the Court applied the standard announced in *Van Guilder* and held "that a rational trier of fact could have resolved the conflicting testimony on legal insanity against appellant." *Id.* at 330. Conceding that "we certainly understand the Court of Appeals might have disagreed with the jury's resolution of the conflicts in the evidence, it could not interfere with the verdict unless the jury's decision was irrational, ..." *Van Guilder*, 709 S.W.2d at 180. To permit such a review would allow the court of appeals "to serve as a 'thirteenth juror with veto power.'" *Schuessler*, 719 S.W.2d at 330. (Quoting from *Van Guilder v. State*, supra, at 180.)

In *Arnold v. State*, supra, the Court extended the *Van Guilder* analysis to reviewing the evidence admitted in conjunc-

tion with a plea of incompetency. In doing so the Court reversed the court of appeals which had held that the jury's verdict finding the defendant competent "was so against the great weight and preponderance of the evidence as to be manifestly unjust." *Id.* at 591.

The concrete in which *Arnold* was set obviously flowed from *Van Guilder* and *Schuessler*, thus before addressing the analysis performed in *Arnold* we feel compelled to review in some detail *Van Guilder* and its progeny. In concluding that the standard of review applicable in determining whether a defendant sustained his burden of proof in presenting the affirmative defense of insanity was a modified *Jackson v. Virginia*, supra, rational juror test rather than a great weight and preponderance of the evidence standard we observed in *Van Guilder*, 709 S.W.2d at 181:

> Problems with the burden shifting in affirmative defense cases are presented in reviewing the sufficiency of both the affirmative defense and all the evidence. In order to preserve the minimum due process protection established in *Jackson,* supra, and *Winship,* supra, the court of appeals must be allowed to review the sufficiency of the evidence to support the defendant's affirmative defense as well as the sufficiency of the evidence to support the conviction. Otherwise, a defendant's constitutional right to a review of the sufficiency of the evidence to support his conviction is violated. For example, in a case in which the affirmative defense of insanity is asserted and the State responds with some form of rebuttal evidence, be it by cross-examination of defendant's witnesses or by direct examination of their own witnesses, in order for the court of appeals to fulfill the *Jackson* test it must make some kind of determination on sanity because the evidence has made sanity an issue in the case. Without this review on sanity, in every case involving this affirmative defense issue, the appellate court would be constrained to find that the evidence supported the verdict because they would have to *assume* that the affirmative defense was not ade-

quately proven. In short, the appellate court would have to accept the implicit jury finding on the affirmative defense even if irrational. [Emphasis in original]

■ For the following reasons we now find that such observations were erroneous. First, although Art. 1820, V.A.C.S., then as § 22.225, *Govt. Code,* expressly limits the court of appeals' fact jurisdiction to civil cases, there is no corresponding statute that states such fact jurisdiction is not to be applied to criminal cases. Second, Judge Clinton's perceptions in his dissenting opinion in *Schuessler,* at 330–31, now come home to roost as they clearly demonstrate that the standard of review enunciated in *Jackson* is not a constitutional standard imperative to determining whether a defendant sustained his burden of proof in presenting an affirmative defense. Judge Clinton also properly notes that although *Jackson* was certainly derived from *In re Winship,* 379 U.S. 358, 85 S.Ct. 441, 13 L.Ed.2d 541 (1970), neither case deals with due process requirements concerning the sufficiency of proof or the appellate review of an affirmative defense. Since an affirmative defense is obviously not an element of the offense, it is within the State's power and its responsibility to regulate the procedures under which such laws are carried out, so long as the traditional notions of due process are not offended. *Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977). While some form of appellate review of the evidentiary sufficiency of an affirmative defense is necessary, it was not appropriate for this Court to create a standard of review which is in conflict with the language of our State Constitution. Third, in *Van Guilder* the Court concluded that the standard of review it detailed was necessary "when the defendant is contesting the sufficiency of the evidence to support his conviction because of his assertion that he adequately proved his affirmative defense." *Van Guilder,* 709 S.W.2d at 181. This is a faulty premise because it assumes that a defendant's complaint that, notwithstanding the jury's verdict to the contrary, he proved his affirmative defense by a prepon-

derance of the evidence necessarily includes a complaint that the State failed to prove the elements of the offense beyond a reasonable doubt. That is simply not always the case. The defect in the premise is most evident when one examines the theortical basis for affirmative defenses.

At the foundation of every affirmative defense is the practical, if not technical, necessity of the defendant acknowledging he committed the otherwise illegal conduct. This State recognizes only four affirmative defenses: Defense to Criminal Responsibility of Corporation or Association (§ 7.24 *Tex.Penal Code*), Insanity (§ 8.01 *Tex.Penal Code*), Mistake of Law (§ 8.03 *Tex.Penal Code*), and Duress (§ 8.05 *Tex.Penal Code*). In every instance it is inevitable that the defendant would have to at least by implication concede the commission of the act in order to avail himself of the affirmative defense. For example, in a case in which the defendant claims insanity, as a practical matter, he is necessarily conceding he committed the offense. Similarly, if a defendant is claiming he is incompetent to stand trial the facts relating to his guilt are irrelevant. It is apparent therefore that a review of the facts relative to proof of an affirmative defense does not inexorably lead to a review of facts relative to proof of the elements of the offense. Although a defendant certainly is not foreclosed from requesting both reviews, the former does not incorporate the latter.

■ Consequently, this Court was not constitutionally authorized to adopt a standard of review for the court of appeals concerning an evidentiary review of the insanity defense which was inconsistent with Art. V, § 6, of our Constitution. In doing so we interfered with the fact jurisdiction of the intermediate appellate courts.

■ In addition, the utilization of the standard of review constitutionally reserved for the courts of appeals and required by the Texas Supreme Court to be applied in situations where the burden of proof was on the individual claiming factual insufficiency does not impede a defendant from seeking a factual review relevant to his affirmative defense nor does it preclude him from a sufficiency review as to whether there was sufficient evidence to warrant a conviction. The two reviews are mutually exclusive.

■ At the foundation of every case in which the Supreme Court recognized the constitutional authority of both the courts of civil appeals and the courts of appeals is an awareness of Art. V, § 6 history. It cannot be overly emphasized that the relevant language of Art. V, § 6, supra, has remained a consistent constitutional provision for nearly one hundred years. Of course, the Legislature in 1977 passed a resolution that amended Art. V, § 6, supra. The amendment, which became effective in 1978, authorized more than three justices to sit on a court of civil appeals, permitted them to sit in what the resolution referred to as "sections," and required a majority vote to decide a case. Tex.S.J.Res. 45, 65th Leg., 1977 *Tex.Gen.Laws* 3366. This amendment was passed by the public later that same year. Therefore, the public, whether they knew it or not, in essence confirmed the authority of the court of appeals to review evidence based upon the standards previously established by the Supreme Court.

In 1979 the 66th Legislature proposed that the court of civil appeals become the court of appeals and vested them with intermediate criminal jurisdiction. Tex.S.J. Res. 36, § 5, 66th Leg., 1979 *Tex.Gen.Laws* 3224. This resolution passed at the general election and became effective September 1, 1981. Thus, in two elections, within two years, the public voted to confirm the authority of the court of appeals to review factual sufficiency to the exclusion of the Supreme Court. Most recently, in 1985 the public again voted on Art. V, § 6, supra, and again affirmed the language that the court of appeals' determination of fact shall be conclusive. Tex.S.J.Res. 14 § 2, 69th Leg., 1985.

In summary, despite the recent amendments to Art. V, § 6, supra, the "factual conclusivity clause," has managed to survive undisturbed. While the Supreme Court has noted that there is a potential constitutional conflict between the "factual

conclusivity clause," and the right to a jury trial, it has chosen to strike a balance between the two constitutional provisos rather than to simply ignore one it subjectively believed was less compelling. *Pool v. Ford Motor Co.,* 715 S.W.2d 629 (Tex.1986). The Supreme Court's view concerning this matter is still best expressed in the often quoted language of *In Re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 662 (1951):

> But Article 5, § 6 of the Constitution, Vernon's Ann.St., is no more to be ignored than any other part of that document, and that provision, with the decisions, statutes and rules based upon it, requires the Court of Civil Appeals, upon proper assignment, to consider the fact question of weight and preponderance of all the evidence and to order or deny a new trial accordingly as to the verdict may thus appear to it clearly unjust or otherwise.

■ The court of appeals is therefore constitutionally given the authority to determine if a jury finding is against the great weight and preponderance of the evidence and if this is improper it is up to the people of the State of Texas to amend the Constitution.

Naturally, it is of great concern to this Court, as it was to the Texas Supreme Court, that on the occasions the courts of appeals exercise their fact jurisdiction they may merely substitute their judgment for that of the jury. However, sufficient safeguards can be imposed by this Court to guarantee that the mental processes of the scrivener are reflected in the opinion so that we may ascertain whether the process resulted in an usurpation of the jury function.[2]

We also observe that the standard to test factual sufficiency used by the court of appeals in this case no more usurps the function of the jury than the standard crafted in *Van Guilder.* When an appellate court examines all the evidence concerning competency or an affirmative defense and then seeks to determine if any rational trier of fact could have found that the defendant failed to prove his defense by a preponderance of the evidence, it is using the same mental processes as it would have used had it utilized against the great weight and preponderance. Put simply, against the great weight and preponderance is no more usurpation of the jury than the standard adopted in *Van Guilder* and it progeny.

■ We now find that because of the direct language of Art. V, § 6, supra, the history of the amendment, and the Texas Supreme Court interpretations, we were incorrect in determining that the court of appeals did not have conclusive fact jurisdiction in regards to "questions of fact" concerning the proof of an issue on which the defendant has the burden of proof and the burden of persuasion. Likewise we were in error engrafting a prototype *Jackson* standard of review concerning questions of fact or questions concerning the great weight and preponderance of the evidence. We now join our brethren on the Texas Supreme Court and conclude that the "factual conclusivity clause," within Art. V, § 6, operates to limit our jurisdiction and confers conclusive jurisdiction on the courts of appeals to resolve questions of weight and preponderance of the evidence adequate to prove a matter that the defendant must prove. Moreover, when

**2.** In *Pool,* 715 S.W.2d at 635, the Supreme Court imposed the following safeguards in order to secure the sanctity of the jury trial when the court of appeals was in the process of exercising its conclusive factual authority:

> In order that this court may in the future determine if a correct standard of review of factual insufficiency points has been utilized, courts of appeals, when reversing on insufficiency [great weight and preponderance of the evidence] grounds, should, in their opinions, detail the evidence relevant to the issue in consideration and clearly state why the

jury's finding is factually insufficient or is so against the great weight and preponderance as to be manifestly unjust; why it shocks the conscience; or clearly demonstrates bias. Further, those courts, in their opinions, should state in what regard the contrary evidence greatly outweighs the evidence in support of the verdict. It is only in this way that we will be able to determine if the requirements of *In Re King's Estate* have been satisfied.

See also *Cropper v. Caterpiller Tractor Co.,* 754 S.W.2d 646 (Tex.1988).

the courts of appeals are called upon to exercise their fact jurisdiction, that is, examine whether the appellant proved his affirmative defense or other fact issue where the law has designated that the defendant has the burden of proof by a preponderance of evidence, the correct standard of review is whether after considering all the evidence relevant to the issue at hand, the judgment is so against the great weight and preponderance of the evidence so as to be manifestly unjust. Therefore, *Van Guilder v. State,* supra; *Schuessler v. State,* supra; *Arnold v. State,* supra; and their progeny are overruled. Furthermore, footnote 1 in *Combs v. State,* supra, is disavowed.

Our conclusion in this case is actually dictated by *stare decisis. White v. State,* 591 S.W.2d 851 (Tex.Cr.App.1979), is usually cited as authority for the proposition that a competency hearing is civil in nature. Thus, the number of peremptory challenges available to the State and the defendant are dictated by Rule 233 T.R. C.P. Although *White v. State, id.,* does make such a holding it expressly does much more. In *White,* the defendant argued that the jury's decision regarding his claim of incompetency was " 'so contrary to the great weight and preponderance of the evidence as to be manifestly wrong unjust.' " *Id.* at 854. The Court framed the defendant's complaint as follows:

What appellant is asking this court to do is to consider all the evidence—that which supports the verdict and that which does not—and to set aside the verdict if we conclude that it is so against the weight and preponderance of the evidence as to be clearly wrong and manifestly unjust, regardless of whether there is evidence of probative force to support it. This is the standard of review requested.

*Id.* at 855.

In a unanimous opinion, the Court properly concluded it did not have the authority to review the facts on the basis proposed by the defendant. In reaching its decision, the Court made some observations that are not only compelling but, as previously noted, dictate the result we have reached.

In writing for the Court, former Presiding Judge Onion initially recognized that:

This court has no jurisdiction to do what the appellant requests as would a Court of Civil Appeals because of a somewhat peculiar constitutional provision applicable to Courts of Civil Appeals. Article V, § 6 (Court of Civil Appeals), states in part:

'Provided, that the decision of said courts shall be conclusive on all questions of fact brought before them on appeal or error....' See also Article 1820, V.A.C.S., Texas Rules of Civil Procedure 451, 453, 455.

*Id.* at 855.

Any reading of the quoted language makes it obvious that this Court has expressly recognized that the then courts of civil appeals had the jurisdiction to consider the great weight and preponderance of evidence questions. Moreover, the Court expressly recognized that such jurisdiction was exclusively with the courts of civil appeals to the exclusion of the Supreme Court. In addition, it endorsed the Supreme Court's opinions which interpreted Art. V, § 6, in that manner.

Obviously *White v. State, id.,* preceded the constitutional amendment that conferred criminal jurisdiction upon the courts of civil appeals and made them courts of appeals. *See* p. 152, supra. However, considering that the constitutional amendment did not in any manner affect that portion of Art. V, § 6, which grants the authority to conduct a factual review of the evidence, it is apparent that the Court's observations and conclusions cannot and should not be altered and thus constitute *stare decisis.*

The question remains as to the appropriate disposition of a case in which the court of appeals concludes that the jury's resolution of an issue in which the defendant has the burden of proof and the burden of persuasion is against the great weight and preponderance of the evidence. In *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978) and *Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978), the United States Supreme Court

declared that if a reviewing court finds a defendant's conviction is based upon legally insufficient evidence then the State is constitutionally prohibited from prosecuting the defendant again. In other words, as a practical matter, the State has but one opportunity to amass and present evidence legally sufficient to convict a defendant. In *Tibbs v. Florida*, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982), the Supreme Court encountered and resolved an issue that was similar to but distinct from that it decided in *Burks v. United States* and *Greene v. Massey*. In *Tibbs*, which is set on a rather convoluted procedural stage, the Florida Supreme Court reversed and remanded for retrial the defendant's conviction for murder and rape on the basis that the jury's verdict was contrary to the weight of the evidence. The defendant claimed that a retrial was barred by the Double Jeopardy Clause in the United States Constitution and the principles detailed in *Burks* and *Greene*. The Supreme Court rejected the defendant's argument by first noting the obvious: retrial of a defendant who has successfully appealed his conviction is not automatically prohibited. In fact, according to the Supreme Court, it is only in those cases in which there is legally insufficient evidence to support a conviction that a retrial is prohibited. The Supreme Court then distinguished the terms "insufficient evidence" and "weight of the evidence." As to the former, the Supreme Court cited *Jackson v. Virginia*, and stated that

> a conviction rests upon insufficient evidence when, even after viewing the evidence in the light most favorable to the prosecution, no rational factfinder could have found the defendant guilty beyond a reasonable doubt.

*Tibbs*, 457 U.S. at 37, 102 S.Ct. at 2215.

As to the latter, the Supreme Court observed:

> The 'weight of the evidence' refers to 'a determination [by] the trier of fact that a greater amount of credible evidence supports one side of an issue or cause than the other.'

*Id.* at 37–38, 102 S.Ct. at 2215–2216.

Based on these distinctions the Supreme Court concluded that the Double Jeopardy Clause does not prohibit a retrial if the reversal is based on the "weight of the evidence" rather than "insufficient evidence." In reaching this conclusion the Supreme Court implicitly approved of that which this Court in both *Van Guilder* and *Schuessler* condemned: the practical role of the appellate court. The Supreme Court noted:

> A reversal on this ground, unlike a reversal based on insufficient evidence, does not mean that acquittal was the only proper verdict. Instead, the appellate court sits as a 'thirteenth juror' and disagrees with the jury's resolution of the conflicting testimony. This difference of opinion no more signifies acquittal than does a disagreement among the jurors themselves. A deadlocked jury, we consistently have recognized, does not result in an acquittal barring retrial under the Double Jeopardy Clause. Similarly, an appellate court's disagreement with the jurors' weighing of the evidence does not require the special deference accorded verdicts of acquittal. [Footnote omitted]

*Id.* 457 U.S. at 42, 102 S.Ct. at 2218.

■ Although we are not concerned with and express no opinion of the role of the court of appeals in reviewing the sufficiency of the evidence relative to the proof of the elements of the offense, the Supreme Court's observations in *Tibbs v. Florida* produce the inescapable conclusion that the Double Jeopardy Clause does not prohibit a retrial if a conviction is reversed on the basis that the jury's rejection of a defendant's plea of insanity or incompetency is against the great weight and preponderance of the evidence.

Based on the preceding observations, the court of appeals' judgment is affirmed.

DAVIS, CLINTON and WHITE, JJ., concur in result.