# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00707-CR

**Achim Joseph Marino, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT NO. 9024196, HONORABLE BOB PERKINS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant Achim Joseph Marino guilty of capital murder. *See* Tex. Pen. Code Ann. § 19.03 (West Supp. 2004). The district court sentenced him to life in prison, the State having waived the death penalty. *See id*. § 12.31(a) (West 2003); Tex. Code Crim. Proc. Ann. art. 37.071, § 1 (West Supp. 2004). Appellant argues that the penal code definition of insanity denies equal protection of the laws, the jury's failure to find him insane was against the great weight of the evidence, and the prosecutor engaged in improper jury argument. We will overrule these contentions and affirm.

On the morning of October 24, 1988, appellant robbed and sexually assaulted an employee of an Austin pizza restaurant, then fatally shot her in the head. The primary issue at trial was whether appellant was sane at the time of the offense.

Appellant testified that his family has a history of mental illness. He began seeing spirits or demons as a child. According to appellant, these spirits instructed him in their "belief systems." By the time he was twelve, appellant was engaging in such disruptive behavior that he was placed in a private psychiatric hospital in Austin. Following his release from the hospital four years later, appellant lived in a series of shelters and also spent time in the Austin State Hospital. Appellant said that he abused drugs and alcohol in an effort to control the spirits. He went to prison for the first time in 1982, at the age of twenty-three, after a theft conviction. Ten days after he was paroled for that offense, he committed an armed robbery and returned to prison. Appellant testified that in the summer of 1988, the spirits were urging him to kill a blond, white woman. In July, he sexually assaulted a woman but did not kill her because she was neither white nor blond.

Appellant described the murder at the pizza restaurant as a "human sacrifice" and a "ritual"—in his words, "certain things . . . had to be said and done and . . . they were done." Appellant was asked during cross-examination if, at the time of the murder, he knew the difference between right and wrong. He answered:

> I did know—beyond a reasonable doubt, I knew that general knowledge thou shalt not murder, which is defined as the killing of an innocent person in an unjust manner.
>
> I also knew in this country, as well as Europe, that murder was illegal. It's the same definition, but the point of inquiry here is not what I knew, but what I believed. What I mean by that is what I believed is that I had the right to kill.

Appellant acknowledged that what he did was legally wrong, but asserted that it was not wrong from his "faith standard" at that time. Appellant testified that in 1995, while in prison for another offense,

he experienced a religious conversion. Three months later, he wrote his first letter to the authorities admitting his guilt of the murder.

Dr. Jay Fogelman, a psychiatrist, examined appellant and reviewed his extensive psychiatric record at the request of defense counsel. Fogelman testified that appellant is schizophrenic and psychotic. He added that appellant is "the sickest of the sickest I've seen" in twenty-five years of practice. Fogelman testified that appellant "believes he was mandated to kill just one person, and that's what he did." But Fogelman did not consider appellant to be legally insane:

> I want to state early on, early on that this patient, in my opinion, was clearly sane at the time of this rape, robbery, murder. I also want to tell you—you heard him yesterday. You heard him talk yesterday. You heard him ramble. You heard him say things that were scary. You probably have never met anyone as frightening. I hope you haven't met anyone as frightening as him.

A second psychiatrist, Dr. Mary Anderson, examined appellant at the request of the district court. She agreed with Dr. Fogelman that appellant is delusional, but like him was of the opinion that appellant was sane at the time of the offense:

> In my opinion, Mr. Marino knew that his behavior was wrong at the time of the offenses. He says he knew that it was illegal. He says he knew that according to our society that other people would see it as wrong, as illegal.
>
> He tells us that he knows that raping and murdering was also for the purpose of revenge, that he selected this person for revenge. It was, in particular, a white female with blonde hair for the purpose of being—for revenge.
>
> In my opinion, he was sane at the time of these offenses in that whatever his mental state at that time, he knew his behavior was wrong.

3

It is an affirmative defense to prosecution that, at the time of the conduct charged, the defendant, as a result of severe mental disease or defect, did not know that his conduct was wrong. Tex. Pen. Code Ann. § 8.01(a) (West 2003). The burden is on the defendant to prove the affirmative defense by a preponderance of the evidence. *Id*. § 2.04(d). In point of error three, appellant contends the jury's failure to find that he was insane at the time of the offense is against the great weight and preponderance of the evidence. *See Bigby v. State*, 892 S.W.2d 864, 875 (Tex. Crim. App. 1994); *Meraz v. State*, 785 S.W.2d 146, 155 (Tex. Crim. App. 1990).

Appellant concedes that both psychiatrists were of the opinion that he was legally sane at the time of the offense. He points out, however, that the sanity issue is not strictly a medical one, but one that also involves ethical and legal considerations. *Graham v. State*, 566 S.W.2d 941, 948 (Tex. Crim. App. 1978). The ultimate issue of criminal responsibility is beyond the province of an expert witness, otherwise the issue "would be tried in hospitals rather than in courts." *Id*. at 949. While expert testimony might be helpful to the trier of fact, the final determination of insanity is outside the purview of medical experts and should be left to the discretion of the trier of fact. *Id*. at 952. In deciding the issue, the jury may consider not only the medical testimony but the circumstances of the offense and life experiences of the defendant. *Ross v. State*, 220 S.W.2d 137, 139 (Tex. Crim. App. 1949).

We have no doubt that appellant was, and is, psychotic and delusional. But even if appellant truly believed that he had "a right to kill" under his own personal "faith standard," his testimony reveals that he fully appreciated that his conduct was both unlawful and morally wrong under society's standards. Having reviewed all the evidence, we conclude that the jury's failure to

4

find that appellant did not know that his conduct was wrong was not so against the great weight and preponderance of the evidence as to be manifestly unjust. Point of error three is overruled.

In point of error two, appellant urges that the distinction between adults and juveniles with respect to the insanity defense violates equal protection. U.S. Const. amend. XIV. Under the penal code, an adult is absolved of criminal responsibility only if, as a result of severe mental disease or defect, he did not know that his conduct was wrong. Tex. Pen. Code Ann. § 8.01(a). But under the family code, a juvenile is not criminally responsible if, as a result of mental illness or retardation, he "lacks substantial capacity either to appreciate the wrongfulness of [his] conduct *or to conform [his] conduct to the requirements of law*." Tex. Fam. Code Ann. § 55.51(a) (West 2002) (emphasis added). Appellant argues that affording juvenile offenders this broader insanity defense is not rationally related to a legitimate state interest. *See Gregory v. Ashcroft*, 501 U.S. 452, 470 (1991) (age is not suspect classification; requires only rational basis).

Appellant did not raise this issue in the trial court and thus failed to preserve it for appeal. *See Jenkins v. State*, 912 S.W.2d 793, 808 (Tex. Crim. App. 1995). The contention lacks merit in any case. The United States Constitution does not mandate elimination of all differences in the treatment of adult and juvenile offenders. *Schall v. Martin*, 467 U.S. 253, 263 (1984). The State has a parens patriae interest in preserving and promoting the welfare of children that makes a juvenile proceeding fundamentally different from an adult criminal trial. *Id*.; *Lanes v. State*, 767 S.W.2d 789, 791-92 (Tex. Crim. App. 1989). The same State interests that justify the creation of a separate and distinct justice system for juvenile offenders also justify the use in juvenile

proceedings of a different, broader definition of insanity than is used in the adult criminal system. Point of error two is overruled.

Finally, in point one, appellant urges that the prosecutor engaged in improper jury argument. He did not object to the argument, however, and thus the matter was not preserved for review. *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996). We therefore overrule point of error one.

The judgment of conviction is affirmed.

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed: July 1, 2004

Do Not Publish

6