AFFIRM; Opinion issued December 17, 2012.



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-11-01381-CR

### JULIO TREVINO, JR., Appellant

### V.

### STATE OF TEXAS, Appellee

**On Appeal from the 195th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F10-24829-N**

# MEMORANDUM OPINION

Before Justices Bridges, Francis, and Lang
Opinion By Justice Bridges

Appellant Julio Trevino, Jr. appeals his murder conviction and accompanying sentence of

62 years' imprisonment and a $10,000 fine. In three issues, appellant challenges: (1) the legal

sufficiency of the jury's finding appellant failed to prove he caused the death of Pearl Hernandez

while he was under the influence of sudden passion arising from adequate cause; (2) the factual

sufficiency of the jury's negative finding; and (3) the trial court's decision to overrule appellant's

objection to the extraneous offense evidence in the punishment phase of trial. We affirm.

## Background

Appellant pled guilty to the offense of murder as charged in the indictment. The case then proceeded to a trial by jury on punishment. During the punishment phase, the jury heard appellant testify he killed his wife, Pearl Hernandez. He stated, on the date of the incident, he worked all day and came home around 7:00 or 8:00 p.m. Pearl was not home when he arrived, so he called her and she indicated she was shopping in Allen. By midnight, she still was not home and, after calling her several times, she told him she was coming home. When she arrived after 2:00 a.m., they got into an argument.

Appellant testified Pearl told him it was none of his business where she had been, and he could tell she had been drinking. The argument escalated, and she told him she wanted to leave. He said when he turned on the light, she told him to turn it off. He saw hickeys on her neck and thought she had been with someone else. He said she kept telling him to leave the room, that she didn't want him there and kept hitting the wall with her hands. He said he was mad and frustrated and, because he wanted to know what was wrong, he confronted her. He said she tried to scratch him in the face and kept telling him he was going to jail. He did not recall strangling her, but knew that he did.

Appellant stated he did not call the police, because he did not want his children to know what he had done. He put her body in the car and drove her to the church, leaving her body inside the car at the church parking lot. He said he never planned to kill her.

He testified he lied when he called 911 to report Pearl missing, but knew he would ultimately have to pay the price for what he did. When he was interviewed by the police, he would go blank at the point of strangulation.

Appellant did recall that, during the struggle, Pearl wanted him to hit her with an aerosol can. He stated he did not know he had hit her that hard. He also indicated Pearl came at him with a knife,

but he later threw the knife down the road when he took her body to the church. He did not want anyone to know his wife tried to attack him with a knife. He testified he knew nothing about his wife's lover, Stephen.

On cross-examination, appellant stated Pearl told him, about three months prior to the murder, that she was going to leave him. He also testified to his desire to place a tracking device on her car. When Pearl came at him with a knife, appellant said he was swinging with the aerosol can. The can came out of his hand and, when he grabbed her hair to throw her away from him, his hand was lodged in her hair. He said when he pulled, he pulled too hard and she stopped moving. He thought her neck was broken. He did not recall strangling her.

Irene Garcia, the 19-year-old daughter of appellant, testified Pearl told her she was going to leave appellant, but Pearl wanted to wait a year to leave him. Garcia said Pearl told her she did not love appellant anymore. Garcia further testified appellant tried to cover things up to protect her and her siblings.

Naomi Holz, one of Pearl's co-workers, testified she worried about her friend, because she knew appellant had once hit Pearl. Holz knew Pearl had filed a restraining order against appellant in 2010. Pearl told Holz she was going to leave appellant. Holz also said she learned Stephen was Pearl's lover about a week to two weeks prior to Pearl's death.

Elma Garcia testified she dated appellant in high school and had their daughter, Irene. She stated appellant had been arrested and charged with assaulting her in April 1993. Elma testified she was riding in her car with her boyfriend in November 1995, when appellant drove up and started cursing them. She told her boyfriend to keep driving, because she was scared something would happen between the two men.

David Landis, a detective with the Garland Police Department, interviewed appellant.

Appellant told Landis he received the scratches on his face by cutting down a tree and being scratched by some limbs. Appellant eventually changed his story and, when he was told his wife's body had been found and they thought appellant had killed her, he did not deny it. Appellant told Landis his wife had recently been staying out all night, which made him angry. He said appellant eventually stated it was "all on me; I did it."

Appellant admitted he took her body, put her in the back seat of the Tahoe, along with her shoes and purse, drove the Tahoe to the church parking lot, locked the doors and walked back home. Appellant told Landis he cleaned up the blood in the house with some towels and threw them away in a city dumpster. Appellant indicated he was sorry about what he had done.

Landis stated, in her diary,[1] Pearl wrote about her personal feelings and the issues in her marriage. Her diary included references to the affair and to telling her husband she wanted him to leave. Eight days before her death, Pearl wrote she had pressed charges against appellant and, when she told him about calling the police, appellant threatened her.

Dr. Jill Urban, a medical examiner at the Southwestern Institute of Forensic Sciences, stated she performed the autopsy of Pearl Hernandez. Urban testified there were scrapes on the neck and the undersurface of Pearl's chin, which was consistent with strangulation. There was bruising on the inside of the lip, which was consistent with a victim struggling against a hand. There was also extensive hemorrhaging of the muscles inside her neck. She had a laceration on the forehead and one on the scalp towards the back. Urban testified bruising on Pearl's arms could have been defensive wounds.

The jury found appellant was not under the immediate influence of sudden passion arising

---

[1] The diary was admitted as State's Exhibit 67.

from an adequate cause when he caused the death of Pearl Hernandez. Appellant was found guilty of murder as charged in the indictment and sentenced to 62 years' imprisonment and a $10,000 fine.

## Analysis

In his first and second issues,[2] appellant challenges the sufficiency of the jury's finding appellant failed to prove he caused the death of Pearl Hernandez, while he was under the influence of sudden passion arising from an adequate cause.

During the punishment phase of a murder trial, a defendant may argue he caused the death while under the immediate influence of sudden passion arising from an adequate cause. *See McKinney v. State*, 179 S.W.3d 565, 569 (Tex. Crim. App. 2005). "Sudden passion" is "passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation." TEX. PENAL CODE ANN. § 19.02(a)(2) (West 2011). "Adequate cause" is a "cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." *Id.* at § 19.02(a)(1). Sudden passion is a mitigating circumstance that, if found by the jury to have been proven by a preponderance of the evidence by the defendant, reduces the offense from a first degree felony to a second degree felony. *Id.* at § 19.02(c), (d); *see McKinney*, 179 S.W.3d at 569.

When an appellant seeks review of a jury's failure to make a finding on which he had the burden of proof, such as on an affirmative defense, he invokes our factual review jurisdiction. *See Naasz v. State*, 974 S.W.2d 418, 421 (Tex. App.–Dallas 1998, pet. ref'd) (citing *Meraz v. State*, 785 S.W.2d 146, 154-55 (Tex. Crim. App. 1990)). Where the issue is one the defendant has the burden

_____

[2] Appellant challenges the legal and factual sufficiency of the evidence separately. Following our decision in *Johnson v. State*, No. 05-09-00133-CR, 2010 WL 5142392, at *6-7 (Tex. App.–Dallas Dec. 20, 2010, pet. ref'd) (not designated for publication), we discuss these issues together.

to prove by a preponderance of the evidence, *Meraz* remains the proper standard of review. *See Johnson v. State*, No. 05-09-00133-CR, 2010 WL 5142392 at *6-7 (Tex. App.–Dallas December 20, 2010, pet. ref'd) (not designated for publication). Thus, the correct standard of review is whether, after considering all the evidence relevant to the issue, the judgment is so against the great weight and preponderance of the evidence as to be manifestly unjust. *See Meraz*, 785 S.W.2d at 155; *Lewis v. State*, No. 05-10-00810-CR, 2011 WL 2860009 (Tex. App.–Dallas, July 20, 2011, no pet.) (not designated for publication); *Naasz*, 974 S.W.2d at 421.

Although appellant testified he knew nothing about his wife's lover, he admitted Pearl told him, about three months prior to the murder, that she was going to leave him. He told Landis his wife had recently been staying out all night, which made him angry. Appellant also stated his desire to place a tracking device on his wife's car. He further testified, on the night of the murder, he saw hickeys on Pearl's neck and thought she had been with someone else. He also said he was mad and frustrated and, because he wanted to know what was wrong, he confronted her. In addition, Pearl's diary included references to the affair and reflected she had told appellant she was planning on leaving him. Appellant's daughter knew Pearl intended to leave appellant, because Pearl did not love him anymore. Holz testified Pearl told her she was planning on leaving appellant, and she learned Stephen was Pearl's lover about a week to two weeks prior to Pearl's death.

The evidence also shows, eight days before her death, Pearl wrote she had pressed charges against appellant and, when she told him about calling the police, appellant threatened her. Holz also testified she knew appellant had hit Pearl in the past and that Pearl had filed a restraining order against appellant in 2010.

The jury determines the credibility of the witnesses and the weight of the evidence. *See Cain v. State*, 958 S.W.2d 404, 408-09 (Tex. Crim. App. 1997). Based on our review of the evidence, we

conclude the jury's failure to find appellant acted under sudden passion was not so against the great weight and preponderance of the evidence as to be manifestly unjust. *See Meraz*, 785 S.W.2d at 155; *Naasz*, 974 S.W.2d at 421. We overrule appellant's first and second issues. *See Johnson*, 2010 WL 5142392 at *6-7.

In his third issue, appellant challenges the trial court's decision to overrule appellant's objection to the extraneous offense evidence in the punishment phase of trial. Specifically, appellant argues the trial court abused its discretion in allowing the jury to consider the testimony of Christopher Oliva and Elma Garcia. With regard to Elma's testimony, appellant complains her testimony was unreliable during the sub rosa hearing "due to remoteness in that [Elma Garcia] admitted she could not remember any relevant details of the event." Appellant complains of Oliva's testimony, because he "testified to conduct that was assaultive in nature of his own doing."

During the sub rosa hearing, both Elma and Oliva testified to a November 13, 1995 incident, in which they encountered appellant at a laundromat. During that encounter, both witnesses alleged appellant pulled up next to their car and started yelling at them. Both testified Elma warned Oliva not to "go over and have words with [appellant]." Oliva testified Elma was afraid appellant had a gun. Following the encounter, Oliva testified he dropped Elma at home and "went after" appellant. At that point, the trial judge stopped Oliva's testimony, so the State could further visit with Oliva about the incident. When the hearing reconvened, the trial judge determined Oliva's testimony was relevant. Following Oliva's testimony, Elma also testified during the sub rosa hearing as to appellant's 1993 conviction, resulting from his assault on her.

Appellant objected the evidence was too remote and more prejudicial than probative. The trial court overruled the objections and determined evidence of both the 1993 conviction and the 1995 incident was relevant. In addition, the trial court noted the fact that Elma could not remember

–7–

the details of the 1993 conviction went to her credibility, rather than relevance of the conviction itself.

A trial court's decision to admit or exclude extraneous offense evidence during punishment is reviewed under an abuse of discretion standard. *See Mitchell v. State*, 931 S.W.2d 950, 953 (Tex. Crim. App. 1996) (citing *Saenz v. State*, 843 S.W.2d 24, 26 (Tex. Crim. App. 1992)). The legislature has determined that, during the punishment phase, evidence of extraneous crimes or bad acts are admissible subject to certain conditions being met. *See* TEX. CODE CRIM. PROC. ANN. Art. 37.07 § 3(a)(1) (West 2012). In particular:

> [E]vidence may be offered by the [S]tate and the defendant as to any matter the court deems relevant to sentencing, including but not limited to *the prior criminal record of the defendant*, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and, notwithstanding Rules 404 and 405, Texas Rules of Evidence, *any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt* by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act.

*See id.* (Emphasis added). Based on the foregoing, we conclude the trial court did not abuse its discretion in overruling appellant's objection to the extraneous offense evidence in the punishment phase of trial. *See id.*; *Mitchell*, 931 S.W.2d at 953. We overrule appellant's third issue.

Having overruled all of appellant's issues, we affirm the judgment of the trial court.

 

DAVID L. BRIDGES
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

111381F.U05



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

JULIO TREVINO, JR., Appellant

No. 05-11-01381-CR     V.

THE STATE OF TEXAS, Appellee

Appeal from the 195th Judicial District Court of Dallas County, Texas. (Tr.Ct.No. F10-24829-N).
Opinion delivered by Justice Bridges, Justices Francis and Lang.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered December17, 2012.

_____
DAVID L. BRIDGES
JUSTICE