COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-08-089-CR

 

 

KERRY
BOLLMAN                                                                APPELLANT

 

                                                   V.

 

THE
STATE OF TEXAS                                                                STATE

 

                                              ------------

 

             FROM THE 16TH
DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------








A jury convicted Appellant Kerry Bollman of
assault on a public servant and assessed his punishment at ten years=
confinement in the Institutional Division of the Texas Department of Criminal
Justice and a fine of $10,000.  The trial
court sentenced him accordingly.  In two
points, Appellant argues that the evidence at trial was insufficient to support
the jury=s
rejection of his involuntary intoxication defense and that the trial court
reversibly erred by failing to instruct the jury in the punishment charge that
it could not consider unadjudicated extraneous offenses unless they were proven
beyond a reasonable doubt.  Because we
hold that the evidence is factually sufficient to support the jury=s
verdict and that the trial court did not reversibly err, we affirm the trial
court=s
judgment.

                                                 Facts

On the morning of August 25, 2007, Appellant was
an inmate of the Denton County Jail.  He
slipped, fell, and injured his left wrist and the ribs on the left side of his
body.  A guard arrived to assist
Appellant, and Appellant was given an injection of Toradol, a non-narcotic,
nonsteroidal anti‑inflammatory drug for musculoskeletal pain.  Shortly after the injection was administered,
at about 11:30 a.m., Appellant was transferred from the jail to the hospital.

Appellant testified that after he arrived at the
hospital, the medical staff gave him some kind of pill for his pain.  He did not recall whether he was given one
pill or more than one pill.








Officer Kerner, the Denton County detention
officer who transported Appellant to the emergency room that day, testified
that he was with Appellant until shift change at 3:00 p.m.  Officer Kerner said that he and Appellant
engaged in small talk while hospital staff treated Appellant and that several
times during the conversations, Appellant asked him what time his shift change
would be.  Officer Kerner testified that
Appellant asked him five or six times if Officer Welsh would relieve Officer
Kerner.  (Officer Kerner is much larger
physically than Officer Welsh.)  Officer
Kerner also testified that he was unable to tell Appellant who would replace
him at shift change.  During the time
that Appellant was with Officer Kerner, Appellant did not act crazy or silly.








Officer Welsh did, indeed, replace Officer Kerner
at shift change.  Officer Welsh  arrived at approximately 2:45 p.m. to relieve
Officer Kerner at 3:00 p.m.  Officer
Welsh testified that he and Appellant had a conversation and that Appellant was
acting in A[n]ormal, everyday‑person
demeanor.@ 
Officer Welsh and Appellant waited about an hour for Appellant to be
discharged.  Because Appellant was in
pain when he was discharged, Officer Welsh physically assisted him into the van
in a wheelchair.  As Officer Welsh was
securing Appellant=s seatbelt across his chest,
Appellant managed to grab Officer Welsh in a chokehold.  The men began to struggle, and they jumped
out of the van and onto the ground. 
Officer Welsh was in pain as they rolled on the ground.  Officer Welsh testified that he was nearly
unconscious when a civilian arrived and began trying to pull Appellant off of
Officer Welsh.  Officer Welsh was able to
get loose and place Appellant in a leg lock. 
Officer Welsh testified that Appellant was not acting crazy at the time
he began to put Appellant into the van and that Appellant had actually asked
for Officer Welsh=s help.

Two hospital security guards arrived and helped
Officer Welsh handcuff Appellant.  After
Appellant was handcuffed, Officer Welsh called for backup, and Corporal Pena
arrived approximately five minutes later. 
While Officer Welsh waited for a patrol officer, Appellant sat silently
in the parking lot.

Hospital security guards David Bowe and Don Smith
came to the aid of Officer Welsh.  Bowe
testified that he had been monitoring the security cameras when he saw
Appellant being pushed in the wheelchair by Officer Welsh.  When he next saw them, Appellant and Officer
Welsh were on the ground wrestling.  Bowe
and Smith ran to Officer Welsh=s
aid.  After Appellant was handcuffed, he
was compliant and not acting in an unusual manner.  After Bowe left the scene, he reviewed the
tape of the incident.  He testified that,
while watching the tape, he saw Appellant look back over his left shoulder as
he was being wheeled to the van.








Smith testified that he handcuffed Appellant
after he arrived on the scene.  He also
testified that Appellant complied with his requests while being
handcuffed.  In Smith's opinion,
Appellant=s demeanor was Aquiet
and calm,@ and he was not acting in an
unusual manner.  Albert Freeland, the
civilian who had first assisted Officer Welsh, testified that Appellant cursed
at him and stated, AThis ain=t any of
your business.@

Corporal Pena of the Denton County Sheriff=s
Office, the officer who transported Appellant back to the jail, testified that
he did not notice anything that indicated Appellant needed mental health
treatment.  He testified that there was
no conversation between Appellant and himself and that Appellant did not
exhibit any unusual behavior, although he did testify that Appellant would not
respond to him and appeared to have shut down.

Appellant called as defense witnesses his mother
and his two neighbors.  Appellant also
testified on his own behalf.  He stated
that he remembered the events in the hospital and remembered starting toward
the van.  He testified that he could not
recall if he had been given more than one pill. 
He denied recalling any conversations with Officer Kerner or attacking
Officer Welsh.  He did recall hitting the
ground, but he did not remember Freeland=s
pulling him off of Officer Welsh or having any conversation with Freeland.  Appellant testified that he did not  intentionally or purposely attack Officer
Welsh and that he only vaguely recalled riding back to the jail with Corporal
Pena.








Appellant related an incident in Denton County
Jail that occurred on May 29, 2007, almost three months before the incident
with which he was charged.  When he had
originally booked into jail on May 25, he experienced pain.  He testified that he was given pain
medication after having turned it down several times.  On other occasions, however, he accepted the
pain medication.

Appellant called Michael Clark, a sergeant
assigned to booking for the sheriff=s
office, as a witness.  Clark testified
that on May 29, 2007, Appellant was in his cell naked and scratching himself
because he believed he had bugs crawling on him.  Appellant then grabbed his own arm and pulled
it really hard.  Clark, with the assistance
of two other officers, subdued Appellant and handcuffed him.  Appellant screamed that they were stabbing
him with needles, and he resisted the handcuffs, so Clark had him placed in a
restraint chair.  Appellant denied that
he was under the influence of drugs or alcohol. 
At some point, Clark ordered two officers to release Appellant from the
restraint chair.  Officer Clark went into
the cell and ordered Appellant to kneel so that he and the other two officers
could safely exit the cell.  Appellant refused,
jerked away from one officer, got loose from the other officer, and began
screaming.  Clark pulled out his taser
and ordered Appellant to the ground. 
Appellant refused, screamed at Clark to tase him, and then began
advancing toward Clark.  Clark shot
Appellant with the taser, and Appellant fell to the ground.  Appellant had to be placed in the restraint
chair again.








Appellant=s
mother, Claudia Bollman, and Madalyn and Larry Edens, Appellant=s
neighbors, also testified on Appellant=s
behalf.  Mrs. Bollman testified that she
had seen Appellant become aggressive or act Aabsolutely
silly, stupid, crying, one or the other@ when he
had adverse reactions to pain medications. 
Mr. and Mrs. Edens testified that when Appellant is given pain killers
or anesthetics, he can become very violent or argumentative, almost paranoid.

Michael Tribble, a paramedic working at the
health facility of the Denton County Jail, testified that Appellant=s
medical records showed that on May 26, 2007, Appellant was prescribed one or
two Darvocet pills every six hours as needed. 
He also testified that the Darvocet would not have been dispensed
without Appellant=s request.  He also testified that Appellant was
prescribed a regimen of Ativan for treatment of alcohol withdrawal and an
injection of Thiamin on the same date.

On May 29, 2007, Appellant had been placed in a
safety cell because he had become unruly, yelling and banging on the wall.  Appellant would not stop this behavior when
approached by officers.  Tribble
testified that the records also indicated that earlier that morning, Appellant
had been moved to a safety cell for hallucinations and placed in a restraint
chair after having been tased.








                         Evidence
Sufficient to Reject Appellant=s

                               Involuntary
Intoxication Defense

In his first point, Appellant contests the
sufficiency of the evidence to support the jury=s
rejection of his involuntary intoxication defense.[2]  Insanity is an affirmative defense to
prosecution.[3]  Involuntary intoxication that causes insanity
is included within the affirmative defense of insanity.[4]  The defendant has the burden of proving an
affirmative defense by a preponderance of the evidence.[5]

As Judge Cochran explained in her thoughtful
dissent in Watson v. State,[6]
discussing the development of factual sufficiency review in criminal cases,








Review for legal sufficiency under the Jackson Abeyond a reasonable doubt@ standard is required for
every element that supports a conviction, but a sufficiency‑of‑the‑evidence
review under civil standards is appropriate when reviewing affirmative defenses
in which the defendant bears a burden of Apreponderance of the evidence.@  In Meraz, this Court held that the Afactual conclusivity
clause@ of the Texas
Constitution applies when the defendant bears the burden of proof by a
preponderance of the evidence.

 

And this Court followed Meraz in Bigby v. State, by
reviewing the sufficiency of the evidence that supported the jury=s rejection of the
defendant=s affirmative defense of
insanity in a capital murder trial.  In Bigby,
as in Meraz, the burden of proof was on the defendant to establish his
defense by a preponderance of the evidence. 
In that context, use of the civil standards adopted by the Texas Supreme
Court is entirely appropriate.  In these
cases, Texas courts have the power and authority to conduct a sufficiency
review of the evidence under controlling supreme court precedent because:  (1) both the burden of production and
persuasion is on the defendant; and (2) that burden is the civil standard of
proof Aby a preponderance of the
evidence.@  Both Meraz and Bigby are in
line with the historical and jurisprudential underpinning of Texas civil law
and the Texas Constitution.  We followed
our brethren on the Texas Supreme Court in applying the factual conclusivity
clause to those Aquestions of fact@ for which the proponent
bears the burden of proof by a preponderance of the evidence.  And we should continue to follow that court=s development of
sufficiency‑of‑the‑evidence review when the proponent bears
the burden of proof by a preponderance of the evidence.[7]

 








Therefore, upon review of this point, we must
consider all the evidence relevant to the issue of insanity and determine
whether the verdict is so against the great weight and preponderance of the
evidence as to be manifestly unjust.[8]  In our review, we may not usurp the function
of the trier of fact by substituting our judgment in the place of its verdict.[9]  We may sustain this point only if, after
detailing the relevant evidence and stating in what regard the contrary
evidence greatly outweighs the evidence supporting the verdict, we also clearly
state why the verdict is so against the great weight of the evidence as to be
manifestly unjust, why it shocks the conscience, or why it clearly demonstrates
bias.[10]

Appellant did not recall his conversation with
Officer Kerner or the assault on Officer Welsh. 
He, his mother, and his neighbors testified only that he had a bad
reaction to pain medication.  Nowhere
does Appellant direct us to any evidence that, as a result of intoxication
caused by taking pain medication, he did not know that his conduct was wrong.








To the extent that Appellant=s
insanity defense is implicit in the facts recounted, after examining the entire
record, we cannot say the judgment is so against the great weight and
preponderance of the evidence as to be manifestly unjust.[11]  There was evidence that Appellant planned the
assault in his repeated questioning of Officer Kerner regarding the time of
shift change and whether Officer Welsh, the smaller deputy, would be replacing
him.  There was evidence that Appellant
glanced over his shoulder before attacking Officer Welsh.  There was evidence that Appellant discouraged
Freeland from coming to Officer Welsh=s aid.  The only evidence of insanity was that in the
past Appellant had had a bad reaction to pain medication that caused him to be
silly or unpleasant and his own testimony regarding memory loss.








No expert testified either on behalf of Appellant
or on behalf of the State.  The only
evidence was lay witness testimony.  As
the State argues, quoting Bigby, AUltimately
the issue of insanity at the time of the offense excusing criminal
responsibility lies in the province of the jury, not only as to the credibility
of the witnesses and the weight of the evidence, but also as to the limits of
the defense itself.@[12]  As the State points out, the trier of fact
may consider evidence such as the defendant=s
demeanor both before and after the commission of the offense, as well as any
attempts to evade police or to conceal incriminating evidence.[13]  The trier of fact may consider expressions of
regret or fear of the consequences of the defendant=s
actions, other possible motives for the offense, and other explanations for a
defendant=s behavior.[14]

The jury could have found the evidence defeating
Appellant=s insanity defense more credible
and of greater weight than the evidence of Appellant=s Abad
reaction@ to pain
medication.  We note that the jury heard
evidence that directly after the attack, Appellant was taken back to the jail,
not to a mental health unit.  The jury
also heard evidence that in the summer of 2007, while Appellant was speaking
over the jail telephone, he told friends and family that he would not be in
jail for very long and that the Asystem
has loopholes.@








As for the evidence of the May 2007 episode in
which Appellant was found naked in his cell and screaming about bugs crawling
on him and claiming the officers were stabbing him with needles, the jury could
have believed, and the record supports, that the episode occurred because
Appellant was suffering from alcohol withdrawal.  Additionally, Appellant offered evidence that
he was well aware of his Abad reaction@ to pain
medication and that his mother and neighbors were also aware of his response to
pain medication.  He argues that his
intoxication was involuntary, yet Defendant=s
Exhibit Three reflects that on August 4, 2007, a few weeks before the incident
with which he was charged, Appellant made the following request, AThe
intensity of my headaches I [sic] very bad. 
I need to see a doctor and am in need of pain medication please.@

Voluntary intoxication is not a defense to the
commission of a criminal offense,[15]
although it may be considered by the jury in mitigation of punishment.[16]  Appellant=s burden
was to prove by a preponderance of the evidence that the intoxication was
involuntary and that the intoxication was to such a degree that it rendered him
legally insane.[17]  We hold that there was some evidence that
intoxication was involuntary, but the evidence that Appellant requested pain
medication not long before going to the hospital and that he voluntarily took
the pain medication when it was offered cuts against the alleged
involuntariness of the intoxication.

Finally, Appellant directs us to no evidence in
the record that he was unaware of the wrongfulness of his conduct, but the
record does contain evidence that he was aware of the wrongfulness of his
conduct, that he planned the conduct, and that it was not a spontaneous
outburst.[18]








Considering the entire record, and applying the
appropriate standard of review, we hold that the verdict is not so against the
great weight and preponderance of the evidence of insanity as to be manifestly
unjust.  We overrule Appellant=s first
point.

                           Absence
of Jury Instruction Harmless

In his second point, Appellant argues that the
trial court was obligated to instruct the jury sua sponte in the punishment
charge that the jury could not consider unadjudicated extraneous offenses
unless it believed beyond a reasonable doubt that Appellant had committed them.  Appellant points out that the State proved
that he had prior convictions for arson, assault-family violence, and resisting
arrest.  Additionally, the State offered
evidence to prove two incidents of aggravated assault on a public servant and
one incident of assault on a public servant. 
The trial court did not instruct the jury that it could not consider
those offenses without first finding that the State had met its burden of
proving each of the extraneous offenses beyond a reasonable doubt.  Appellant did not object to the charge and
did not request the instruction.








Appellant had been previously convicted of arson,
assault-family violence, and resisting arrest. 
Consequently, no limiting instruction was required because those
offenses had already been subjected to judicial testing; that is, because
Appellant had already been convicted of those offenses, he had already been
found guilty of those offenses beyond a reasonable doubt.[19]

We next address whether such an article 37.07
instruction was required in regard to the unadjudicated offenses of aggravated
assault on a public servant and assault on a public servant.  Appellant does not provide us any details
concerning the unadjudicated offenses that the State proved.  Appellant merely cites us to thirty-three
pages in the record.  In the interest of
justice we have examined those pages.  Appellant
appears to complain about evidence that he struck a police officer and that he
brandished a knife in an aggressive manner when police officers responded to a
domestic disturbance call.








Appellant relies on Huizar v. State to
argue that a charge instructing the jury in accordance with article 37.07 of
the code of criminal procedure is mandatory even if not requested.[20]  At the punishment stage, evidence may be
offered as to any matter the court deems relevant to sentencing, including
evidence of an extraneous crime or bad act that is shown beyond a reasonable
doubt by evidence to have been committed by the defendant or for which he could
be held criminally responsible.[21]  When the court admits evidence of extraneous
misconduct by the accused, the court must instruct the jury that it cannot
consider this evidence for any purpose unless it is satisfied beyond a
reasonable doubt that these prior acts are attributable to the defendant.[22]  The failure to give this instruction is
charge error even in the absence of a request or objection by the defendant.[23]

Appellant did not request the instruction and did
not object to the jury charge for its failure to contain an article 37.07 instruction.  We, therefore, hold that the trial court
erred by failing to include the article 37.07 instruction in the jury charge,
but, under the Almanza construct, we must determine whether Appellant
suffered egregious harm as a result of the trial court=s error.[24]  Egregious harm consists of errors affecting
the very basis of the case or that deprive the defendant of a valuable right,
vitally affect a defensive theory, or make the case for conviction or
punishment clearly and significantly more persuasive.[25]








In making an egregious harm determination, Athe
actual degree of harm must be assayed in light of the entire jury charge, the
state of the evidence, including the contested issues and weight of probative
evidence, the argument of counsel and any other relevant information revealed
by the record of the trial as a whole.@[26]  The purpose of this review is to illuminate
the actual, not just theoretical, harm to the accused.[27]  Egregious harm is a difficult standard to
prove and must be determined on a case-by-case basis.[28]

Appellant does not explain why the admission of
these offenses was particularly harmful, except to say that they were Athe same
nature as the one of which the jury had already convicted [A]ppellant.@  We have considered the record in its
entirety.  It contains evidence of
Appellant=s past convictions, his violent
and manipulative conduct in jail, and his commission of the offense now before
this court.  The evidence also reflects
Appellant=s statement that he would be out
of jail because of the loopholes in the system and the fact that he planned the
attack on Officer Welsh, choosing to assault him rather than the larger
officer.








The record, exclusive of the unadjudicated acts
of misconduct presented at the punishment phase of the trial, amply justifies
the jury=s
sentence.  When Appellant choked Officer
Welsh, there was evidence that the officer turned blue, was losing
consciousness, and was afraid he was going to die.  As the State points out, Appellant=s
defensive theory was not that he did not do it, but that he did it because of a
bad reaction to painkillers.  The jury
apparently did not believe Appellant=s
defensive theory.  The prosecutor
compared the range of punishment for assault of a public servant with the range
of punishment for aggravated assault of a public servant and argued to the jury
that the bodily injury that Appellant inflicted on Officer Welsh in this case
was Aabout as
far as you can go before getting to serious bodily injury.@

Applying the appropriate standard of review, we
hold that the trial court=s error in failing to provide
the article 37.07 instruction in the jury charge did not egregiously harm
Appellant.  We overrule his second point.








                                             Conclusion

Having overruled Appellant=s two
points, we affirm the trial court=s
judgment.

 

 

LEE
ANN DAUPHINOT

JUSTICE

PANEL:  LIVINGSTON, DAUPHINOT, and MEIER, JJ.

 

LIVINGSTON, J. filed a
concurring opinion.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  May 14, 2009











 
 
 
 
 
 
 




 

 

 

 

 

 

                                               COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-08-089-CR

 

 

KERRY BOLLMAN                                                                APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

             FROM THE 16TH
DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                    CONCURRING MEMORANDUM
OPINION[1]

 

                                              ------------

I agree that appellant=s two
points should be overruled and that his conviction should be affirmed.  However, I write separately because I
disagree with the majority=s use of
a dissenting opinion from the court of criminal appeals as its primary basis
for explaining the factual sufficiency standard related to the jury=s
implicit rejection of appellant=s
affirmative defense.








As the majority correctly indicates, insanity
because of involuntary intoxication is an affirmative defense that a defendant
must prove by a preponderance of the evidence. 
Majority op. at 8; Mendenhall v. State, 77 S.W.3d 815, 818 (Tex.
Crim. App. 2002); see Tex. Penal Code Ann. ' 2.04(d)
(Vernon 2003).  We determine the factual
sufficiency of all of the evidence related to the jury=s
rejection of an affirmative defense by considering whether that rejection is so
against the great weight and preponderance of the evidence as to be manifestly
unjust.  Bigby v. State, 892
S.W.2d 864, 875 (Tex. Crim. App. 1994), cert. denied, 515 U.S. 1162
(1995).

Although the majority=s
opinion cites the standard as stated by the court of criminal appeals in Bigby,
by which we are bound, it principally relies on a dissenting opinion from the
same court, by which we are not bound, to explain that standard.  Majority op. at 8B11
(citing Watson v. State, 204 S.W.3d 404, 421 (Tex. Crim. App. 2006)
(Cochran, J., dissenting)); see Sierra v. State, 157 S.W.3d 52, 60 (Tex.
App.CFort
Worth 2004), aff=d, 218
S.W.3d 85 (Tex. Crim. App. 2007); see also State v. Hardy,  963 S.W.2d 516, 519 (Tex. Crim. App. 1997)
(indicating that even a plurality opinion from the court of criminal appeals is
not binding precedent).  For that reason,
I respectfully concur.

 

TERRIE
LIVINGSTON

JUSTICE

 

DELIVERED:  May 14, 2009











[1]See Tex. R. App. P. 47.4.





[2]Appellant does not
explicitly specify that he challenges only the factual sufficiency of
evidence supporting the jury=s rejection of involuntary intoxication, but his
argument and authorities, including his statement of the standard of review,
make that fact clear.  We therefore
likewise address only factual sufficiency.





[3]Tex. Penal Code Ann. ' 8.01 (Vernon 2003).





[4]See Mendenhall v. State, 77 S.W.3d 815, 817B18 (Tex. Crim. App.
2002); Torres v. State, 585 S.W.2d 746, 748B50 (Tex. Crim. App.
1979).





[5]Tex. Penal Code Ann. ' 2.04(d).





[6]204 S.W.3d 404, 421 (Tex.
Crim. App. 2006) (Cochran, J., dissenting).





[7]Id. at 436B37 (citations and
footnotes omitted).





[8]Meraz v. State, 785 S.W.2d 146, 155
(Tex. Crim. App. 1990).





[9]See id. at 154.





[10]Id. at 154 n.2; see
Clewis v. State, 922 S.W.2d 126, 135B36 (Tex. Crim. App. 1996).





[11]See Bigby v. State, 892 S.W.2d 864, 875
(Tex. Crim. App. 1994), cert. denied, 515 U.S. 1162 (1995).





[12]Id. at 878.





[13]See Torres v. State, 976 S.W.2d 345, 347
(Tex. App.CCorpus Christi 1998, no
pet.).





[14]Id. at 347B48.





[15]Tex. Penal Code Ann. ' 8.04(a) (Vernon
2003).





[16]See id. ' 8.04(b); Tucker
v. State, 771 S.W.2d 523, 533 (Tex. Crim. App. 1988), cert. denied,
492 U.S. 912 (1989).





[17]See Tex. Penal Code Ann. '' 2.04(d), 8.01(a),
8.04(b).





[18]See id. ' 8.01(a).





[19]See Bluitt v. State, 137 S.W.3d 51, 54 (Tex.
Crim. App. 2004).





[20]12 S.W.3d 479, 484 (Tex.
Crim. App. 2000).





[21]Tex. Code Crim. Proc.
Ann. art. 37.07 ' 3(a)(1) (Vernon
Supp. 2008).





[22]Huizar, 12 S.W.3d at 484.





[23]Id.





[24]See Almanza v. State,
686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh=g); see also Ellison
v. State, 86 S.W.3d 226, 228 (Tex. Crim. App. 2002).





[25]Saunders v. State, 817 S.W.2d 688, 692
(Tex. Crim. App. 1991).





[26]Almanza, 686 S.W.2d at 171; see
generally Hutch v. State, 922 S.W.2d 166,172B74.





[27]Almanza, 686 S.W.2d at 174.





[28]Ellison, 86 S.W.3d at 227; Hutch,
922 S.W.2d at 171.





[1]See Tex. R. App. P. 47.4.