*Court of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*



## MEMORANDUM OPINION

No. 04-10-00784-CR

Alan Dennis **GODIN**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 187th Judicial District Court, Bexar County, Texas
Trial Court No. 2009CR2580
Honorable Raymond Angelini, Judge Presiding

Opinion by:   Catherine Stone, Chief Justice

Sitting:       Catherine Stone, Chief Justice
               Phylis J. Speedlin, Justice
               Marialyn Barnard, Justice

Delivered and Filed:  October 12, 2011

AFFIRMED

Alan Dennis Godin appeals his murder conviction.  Godin challenges the sufficiency of the evidence to support the jury's finding that he had the requisite culpable mental state.  Godin also challenges the sufficiency of the evidence to support the jury's rejection of his affirmative defense of insanity.  Finally, Godin contends the trial court erred in denying his requested jury charge on the lesser included offense of criminally negligent homicide.  We affirm the trial court's judgment.

**BACKGROUND**

The evidence is undisputed that Godin walked into a college library where he worked and shot a co-worker, Devin Zimmerman, who died a short time later. Tracey Mendoza was the Dean of Libraries who hired Godin as an adjunct librarian approximately two years before the shooting. Godin was a part-time employee but sought a full-time position. Zimmerman was hired as a full-time reference librarian and instruction coordinator after Godin was hired. Godin did not apply for Zimmerman's position because he was not qualified. Mendoza testified that Zimmerman was well-respected and had excellent technical skills. Mendoza described Godin's technical skills as rudimentary.

Approximately one year before the shooting, Godin and Zimmerman had a disagreement about the interlibrary loan process. Godin reported the disagreement to Mendoza. Mendoza testified that Godin was upset by Zimmerman's approach to the process.

At some point in time, the library started a chat service that allowed students to chat reference questions with the library staff. The service required the library staff to change their status when they were away from the computer. Mendoza recalled Godin being upset with Zimmerman for checking to make sure Godin changed his status when he was away from the computer.

Ten days before the date of the shooting, Godin went into Mendoza's office in an agitated state. Godin stated that he had an argument with Zimmerman, and he felt humiliated by Zimmerman in front of the entire library. Godin showed Mendoza an email Zimmerman had sent him after the incident stating "too much caffeine, my bad."

Mendoza testified that the shooting was senseless. Mendoza recalled the arguments between Godin and Zimmerman only when she was trying to make sense of the shooting. She admitted that she had described the argument preceding the shooting as "no big deal."

Robert Vaughn, who worked at the library for six months before the shooting, testified that Godin thought Zimmerman was trying to get rid of him. Vaughn described the chat room incident in which Zimmerman had sent Godin a reference question while Godin was away from his computer. Godin found out that Zimmerman had sent the question and believed Zimmerman did not have the right to check up on him.

Vaughn also recalled the confrontation ten days before the shooting which also involved the interlibrary loan process. Vaughn described the confrontation as "low key," but stated there was obviously a difference of opinion. Vaughn also believed Godin was threatened by Zimmerman being much younger. The Saturday before the shooting, which occurred on a Monday, Godin asked Vaughn if Mendoza had spoken with him about the confrontation. That same day, Godin told Vaughn about a movie where a man, who was about to be shot, told the shooter, "You'll never get away with it." Godin told Vaughn the shooter replied, "I don't want to get away with it. I just want to do it."

Vaughn was working with Zimmerman the day of the shooting. Vaughn saw Godin walk in front of Zimmerman, put on ear protection, and start shooting. The medical examiner testified that Zimmerman was shot five times.

One of the officers at the scene placed Godin in handcuffs and waited with him in the campus police office. Godin was not being questioned but, while waiting, spontaneously remarked, "I guess I really messed up." When the officer did not respond, Godin further remarked, "I don't care." The officer testified that he smelled alcohol on Godin's breath.

Another officer at the scene recalled Godin telling him, "I know handcuffs are meant for punishment, and I deserve to be punished for what I did."

A student who witnessed the shooting testified that Godin fired the first shot with one hand on the gun. She noticed Godin recoil after the shot. Godin then repositioned himself into a better stance and used both hands to shoot the remaining shots.

Christine Crowley, Godin's ex-wife, testified that Godin had an incident in 2006 which was diagnosed as trans-global amnesia ("TGA"). Godin had worked all day putting together a BBQ pit which required multiple trips to the store. Godin later repeatedly asked Crowley about the same ATM receipt within a short period of time. When Godin and Crowley walked through the living room to go to bed, Godin saw the BBQ pit, became agitated, and asked where it came from. Crowley took Godin to the hospital the following day, and the incident was diagnosed as TGA.

Crowley recalled Godin telling her about the disagreement with Zimmerman, but she thought it had blown over. Crowley described Godin as more embarrassed and devastated by the disagreement than angry. Crowley testified that she believed the shooting was another TGA incident because Godin did not remember it. Crowley testified that Godin had struggled with alcohol abuse in the past. Crowley identified a box full of herbal supplements Godin would take to improve his health. Crowley testified that Godin took some time to reorient after the 2006 incident and was still foggy the following morning. The only medication Godin was prescribed following the 2006 incident was high blood pressure medication.

Dr. Michael R. Arambula performed a forensic exam of Godin and testified that the shooting was another TGA incident. Dr. Arambula testified that Godin attempted to self-medicate his illnesses using herbal medicines, which likely aggravated his depression. Dr.

Arambula testified that some of the risk factors for TGA were migraine headaches, high blood pressure, and some kind of central nervous system disease, and Godin had all of these risk factors. Dr. Arambula testified that during a TGA incident, the person is in a state of automatism where right and wrong do not matter. Dr. Arambula stated that he was unaware of the timing of the incident where Godin told Vaughn about the movie scene. Dr. Arambula admitted that he would have factored this into his analysis if he had known the timing. Dr. Arambula also admitted that regaining full memory after a TGA episode usually takes several hours. Dr. Arambula did not believe Godin was fully aware of the shooting, however, until after he arrived at the magistrate's office several hours later. Dr. Arambula testified that Godin likely made the statements to the officers at the scene based on what he observed, not based on his awareness at the time of the shooting. Dr. Arambula admitted that TGA is a rare disease and has a low risk of recurrence.

Dr. Brian Skop testified that TGA only affects a person's ability to form and retain memories during an episode and does not affect a person's cognitive abilities in understanding what the person is doing. Dr. Skop testified that even if Godin had experienced another TGA episode, he was still making conscious decisions; he just would not remember his actions. Dr. Skop testified that TGA does not affect moral culpability or knowledge. Dr. Skop did not believe that Godin was suffering from TGA at the time of the shooting. Dr. Skop compared the incident in 2006 with the shooting, noting Godin's wife was a witness to his memory loss in 2006, whereas there were no witnesses to confirm Godin was suffering from memory loss before the shooting. Moreover, the evidence established that Godin remained in a confused state in 2006 for a long period of time. Immediately after the shooting, however, Godin did not appear confused, especially given the statements he made to the police.

**SUFFICIENCY**

In evaluating the legal sufficiency of the evidence to support a criminal conviction, "we consider all the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). "Viewing the evidence 'in the light most favorable to the verdict' under a legal-sufficiency standard means that the reviewing court is required to defer to the jury's credibility and weight determinations because the jury is the **sole** judge of the witnesses' credibility and the weight to be given their testimony." *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010) (emphasis in original).

A defendant asserting an insanity defense must prove by a preponderance of the evidence "that, at the time of the conduct charged, the actor, as a result of severe mental disease or defect, did not know that his conduct was wrong." TEX. PENAL CODE ANN. § 8.01(a) (West 2011); *see also Meraz v. State*, 785 S.W.2d 146, 150 (Tex. Crim. App. 1990); *Lantrip v. State*, 336 S.W.3d 343, 346 (Tex. App.—Texarkana 2011, no pet.). Where a defendant bears the burden of proof on an affirmative defense such as insanity, the standard of review is whether, after considering all the evidence relevant to the issue at hand, the judgment is so against the great weight and preponderance of the evidence as to be manifestly unjust.[1] *Meraz*, 785 S.W.2d at 155; *Lantrip*, 336 S.W.3d at 346.

---

[1] The State suggests in its brief that the sufficiency standard of review relating to affirmative defenses should be reconsidered based on the Texas Court of Criminal Appeals' holding in *Brooks* that the "legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." 323 S.W.3d at 895. Because we hold the evidence is sufficient even under the factual sufficiency standard, we do not address this contention. *But see id.* at 924 & n.67 (Cochran, J., concurring) (suggesting *Meraz* standard would still be applicable).

Both of Godin's sufficiency arguments rely on Dr. Arambula's testimony for support. The jury, however, was free to reject Dr. Arambula's testimony in favor of Dr. Skop's. Moreover, rejecting Dr. Arambula's testimony is not against the great weight and preponderance of the evidence. In addition to the differing expert opinions, the jury heard the testimony regarding Godin's anger toward Zimmerman. The jury also heard Vaughn's testimony regarding Godin's reference to the movie involving a shooting two days prior to the actual shooting. The jury further heard testimony about Godin consciously repositioning himself after the first shot and about the statements Godin made immediately after the shooting. Finally, the jury heard the testimony of the differences between the TGA episode in 2006 and the shooting in 2008. After reviewing all of the evidence, we hold the evidence is legally sufficient to support the jury's finding of guilt. We further hold that the jury's rejection of Godin's insanity defense was not so against the great weight and preponderance of the evidence as to be manifestly unjust.

## LESSER-INCLUDED OFFENSE

"The determination of whether a lesser-included-offense instruction requested by a defendant must be given requires a two-step analysis: (1) Is the requested charge for a lesser-included offense of the charged offense? (2) Is there trial evidence that supports giving the instruction to the jury?" *Rice v. State*, 333 S.W.3d 140, 144 (Tex. Crim. App. 2011). Under the second prong of the analysis, the reviewing court must "determine if there is some evidence in the record which would permit a jury to rationally find that, if the defendant is guilty, he is guilty only of the lesser-included offense." *Id*. at 145. "The evidence must establish the lesser-included offense as a valid, rational alternative to the charged offense." *Id.*

A person acts with criminal negligence if the actor ought to be aware of a substantial and unjustifiable risk that a particular result will occur, but fails to perceive that risk. *See* TEX.

PENAL CODE ANN. § 6.03(d) (West 2011). Godin argues that the trial court erred in overruling his request for the lesser included offense of criminally negligent homicide based on the large amount of over-the-counter herbal medications and vitamin supplements he took. Godin contends that if he is culpable for the killing, "he is culpable through criminal negligence in not getting the proper medical attention and in taking the herbals and the supplements."

Godin's argument, however, does not even address how the herbal medications and supplements affected his ability to perceive the risk of killing Zimmerman. More importantly, there was no evidence that the herbal medications and supplements actually affected his awareness. At trial, the testimony pertaining to the herbal medications and supplements appeared to be directed at Godin choosing to self-medicate the illnesses which Dr. Arambula listed as factors for TGA. The testimony was not directed at the herbal medications and supplements affecting Godin's awareness of risks. Accordingly, the evidence at trial did not establish criminally negligent homicide "as a valid, rational alternative to the charged offense." *Rice*, 333 S.W.3d at 145.

## CONCLUSION

The trial court's judgment is affirmed.

Catherine Stone, Chief Justice

DO NOT PUBLISH