

# NUMBER 13-14-00201-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

JOANNA MARTINEZ GONZALEZ,                                          Appellant,

v.

THE STATE OF TEXAS,                                          Appellee.

### On appeal from the 107th District Court
### of Cameron County, Texas.

# MEMORANDUM OPINION

### Before Justices Benavides, Perkes, and Longoria
### Memorandum Opinion by Justice Benavides

A Cameron County jury found appellant Joanna Martinez Gonzalez guilty of one

count of possession of a controlled substance in Penalty Group 2 in the amount of four

grams or more but less than 400 grams, a second-degree felony, *see* TEX. HEALTH &

SAFETY CODE ANN. § 481.116(d) (West, Westlaw through 2015 R.S.); one count of

possession of a controlled substance in Penalty Group 1 in the amount of less than one gram, a state-jail felony, *see id.* § 481.116(b) (West, Westlaw through 2015 R.S.); and one count of unlawfully possessing a firearm, a third-degree felony, *see* TEX. PENAL CODE ANN. § 46.04(a)(1) (West, Westlaw through 2015 R.S.). By one issue, Gonzalez challenges the factual and legal sufficiency of the jury's adverse finding against her affirmative defense of duress. We affirm.

## I. BACKGROUND

On March 12, 2010, Brownsville police were dispatched to a Stripes gas station following a call to 9-1-1 that a vehicle involved in an earlier alleged aggravated assault was parked at the gas station.[1] Officer Carlos Camacho was the first to arrive at the scene and approached the vehicle, a green Cadillac, where he observed a male (later identified as Luis Villarreal) pumping gas and a female (later identified as Gonzalez) standing outside of the vehicle. As his patrol unit approached the suspected vehicle, Villarreal and Gonzalez entered the car. At that point, Officer Camacho exited his patrol car, drew his service weapon, and initially ordered Villarreal, and later Gonzalez, to exit the vehicle.

Soon after, backup officers arrived at the Stripes to assist Officer Camacho. One officer, Richard Haralson III, testified that shortly after he arrived at the scene, he placed Villarreal under arrest. According to Officer Haralson, he searched Villarreal, but found no contraband on his person. Officer Selena Silva arrived next to assist with patting

---

[1] The call to police came from one of the complainants of the aggravated assault, who had followed the suspected vehicle in her vehicle to the Stripes from another gas station where the alleged aggravated assault took place.

2

down Gonzalez. Officer Silva testified that police were looking for a weapon that had been involved in the earlier aggravated assault. Officer Silva stated that upon beginning the pat down, Gonzalez leaned her body against the vehicle and became uncooperative and "resistant", thereby making it difficult for Officer Silva to conduct the search. Eventually, with the assistance of other officers, Officer Silva was able to begin patting down Gonzalez. Once Officer Silva began the pat down, Gonzalez told her "I'll just give it to you. I'll give you the gun." At that point, Officer Silva placed Gonzalez in handcuffs and recovered a handgun from under the left side of Gonzalez's clothing. In addition to the firearm, police recovered from her person different colored pills, cocaine, and approximately $1,300 in cash.[2] According to Officer Silva, at no time did Gonzalez deny ownership of the firearm or drugs nor did she attempt to blame Villarreal. Instead, Officer Silva described Gonzalez that night as "resistant" and "hostile" to the officers.

Officer Ruby Mascorro testified that she transported Gonzalez from the Stripes to the city jail. On the way to the jail, Officer Mascorro observed Gonzalez "moving way too much" in the backseat of the patrol unit and later discovered that Gonzalez had removed her handcuffs. Officer Mascorro described Gonzalez as "not cooperative" with police that night, but she had complained to Officer Mascorro that earlier that night, Villarreal had assaulted her prior to her arrest and forced her into his car from her house to travel with him to the Stripes gas station. As a result of the complaint, Officer Mascorro was ordered to transport Gonzalez to a nearby hospital for evaluation, where

---

[2] Gene Hanson of the Texas Department of Public Safety's crime laboratory testified that the substances found on Gonzalez were: (1) methlenedioxy methamphetamine weighing 11.78 grams; (2) methamphetamine weighing 7.77 grams; and (3) cocaine weighing 0.82 grams.

3

she remained for the rest of the evening.

Gonzalez also testified in her own defense. According to Gonzalez, Villarreal, who is her ex-boyfriend, showed up at her home on March 12, 2010, after committing the earlier aggravated assault, intoxicated and "drugged up." Gonzalez and Villarreal then proceeded to argue and Villarreal hit her. Gonzalez described Villarreal as a violent person and claimed that he had a firearm on his person that night. Gonzalez stated that after the fight, Villarreal ordered her to accompany him in his car or "he was going to do something to me and my family." Gonzalez testified that she felt threatened by Villarreal and accompanied him. Once at the Stripes gas station, the police showed up and Villarreal told her to "grab the stuff" and if she did not, he threatened to kill her and stated that she had to take the blame for the contraband. Gonzalez stated that she was scared of Villarreal because he is a member of the Texas Syndicate gang. Finally, Gonzalez testified that the morning following her arrest, the magistrate arraigning her discovered that Villarreal had assaulted her the previous night and ordered an emergency protective order.

In addition to receiving instructions in the jury charge related to each count alleged in the State's indictment, the jury also received an instruction regarding Gonzalez's affirmative defense of duress. *See id.* § 8.05 (West, Westlaw through 2015 R.S.). The jury found Gonzalez guilty of all three counts as alleged in the indictment. The trial court entered a concurrent sentence of eight years' imprisonment for count one, two years' imprisonment for count two, and eight years' imprisonment for count three. This appeal followed.

4

## II. AFFIRMATIVE DEFENSE

By her sole issue, Gonzalez challenges the legal and factual sufficiency of the evidence to support the adverse jury finding against her affirmative defense of duress.

### A. Standard of Review

#### 1. *Brooks/Jackson* Standard

We review sufficiency of the evidence establishing the elements of a criminal offense for which the State has the burden of proof under the single sufficiency standard set out in *Jackson v. Virginia*—that is, whether viewing the evidence in the light most favorable to the verdict any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Matlock v. State*, 392 S.W.3d 662, 667 (Tex. Crim. App. 2013); *see also Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.) (holding that the *Jackson* legal sufficiency standard "is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt.").

#### 2. Modified two-step *Sterner* Legal Sufficiency Standard

However, the *Brooks* decision did not affect the standards of review in the context of affirmative defenses where the rejection of an affirmative defense is established by a preponderance of the evidence. *See Matlock*, 392 S.W.3d at 667. Instead, we continue to review a jury's rejection of an affirmative defense in a criminal case using civil burdens of proof and standards of review. *Id.*

When reviewing the legal sufficiency of the evidence to support a jury's rejection of an affirmative defense, we construe the issue as an assertion that the contrary was

established as a matter of law. *Id.* at 669. In so doing, we search the record for evidence favorable to the finding, disregarding all contrary evidence unless a reasonable factfinder could not. *Id.* If we find no evidence supporting the finding, we then determine whether the contrary was established as a matter of law. *Id.* (labeling such a review the "modified two-step [*Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989)] standard"); *see also City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). If we conclude that the defendant conclusively established her affirmative defense under the modified two-step *Sterner* test, we must then render a judgment of acquittal.

### 3. *Meraz* Factual Sufficiency Standard

Furthermore, a defendant may also raise a factual-sufficiency challenge to the jury's adverse finding on her affirmative defense. *Matlock*, 382 S.W.3d at 670. Under this review, we consider the entire body of evidence and determine whether the jury's adverse finding on her affirmative defense was so against the great weight and preponderance of that evidence to be manifestly unjust. *Id.* at 671 (citing *Meraz v. State*, 785 S.W.2d 146, 155 (Tex. Crim. App. 1990) (en banc)). While viewing the entirety of the evidence in a neutral light under this review, we may not "usurp the function of the jury by substituting its judgment in place of the jury's assessment of the weight and credibility of the witnesses' testimony." *Id.* Therefore, an appellate court may sustain a defendant's factual-sufficiency claim only if, after setting out the relevant evidence and explaining precisely how the contrary evidence greatly outweighs the evidence supporting the verdict, the court clearly states why the verdict is so much against the great weight of the evidence as to be manifestly unjust, conscience-shocking, or clearly biased. *Id.* If we reverse the verdict based upon a factual-sufficiency claim that the jury's verdict is

6

against the great weight of the evidence, the appropriate remedy is a new trial, not an acquittal. *Id.* at 672.

## B. Discussion

In this case, Gonzalez asserted an affirmative defense of duress to excuse criminal culpability in each of the three counts alleged against her. The affirmative defense of duress is outlined as follows:

> (a) It is an affirmative defense to prosecution that the actor engaged in the proscribed conduct because [she] was compelled to do so by threat of imminent death or serious bodily injury to [herself] or another.
>
> (b) In a prosecution for an offense that does not constitute a felony, it is an affirmative defense to prosecution that the actor engaged in the proscribed conduct because [she] was compelled to do so by force or threat of force.
>
> (c) Compulsion within the meaning of this section exists only if the force or threat of force would render a person of reasonable firmness incapable of resisting the pressure.
>
> (d) The defense provided by this section is unavailable if the actor intentionally, knowingly, or recklessly placed [herself] in a situation in which it was probable that [she] would be subjected to compulsion.
>
> (e) It is no defense that a person acted at the command or persuasion of [her] spouse, unless [she] acted under compulsion that would establish a defense under this section.

TEX. PENAL CODE ANN. § 8.05 (West, Westlaw through 2015 R.S.).

## 1. Legal Sufficiency

We first turn our review to the two-step, modified *Sterner* legal sufficiency test. The record in this case shows that a rational jury could have rejected Gonzalez's affirmative defense claim for a number of reasons. First, Officers Silva and Mascorro testified about Gonzalez's behavior during their attempt to pat her down. Officer Silva described Gonzalez as resistant to the search and acted difficult in its facilitation.

7

Furthermore, although Gonzalez admitted to possessing the gun, she never admitted to possessing the drugs, nor did she ever deny ownership of the gun or drugs or tell the officers that Villarreal had threatened her in order to compel her to possess the gun and drugs. To the contrary, Officers Silva and Mascorro both testified that Gonzalez was uncooperative with them during the ordeal and it was not until Gonzalez was transported to the jail that she told Officer Mascorro that Villarreal had assaulted her earlier that evening. Therefore, we conclude that legally sufficient evidence exists to support the jury's finding, and as a result, we need not analyze the second step of the modified *Sterner* test. *See Matlock*, 392 S.W.3d at 669.

### 2. Factual Sufficiency

Next, we will review whether the evidence is factually sufficient to support the jury's adverse finding. Jurors in this case were essentially presented with conflicting evidence regarding Gonzalez's alleged claim of duress. Officer Silva testified that Gonzalez never told her that Villarreal had threatened her to hold the gun or drugs, and went as far as trying to hinder the police from searching her. The evidence also shows that at the point in which Gonzalez could have told police about Villarreal's threats, Villarreal had already been placed under arrest and out of her immediate presence. Jurors also heard from Gonzalez, who explained that Villarreal was a violent person who forced her out of her house to accompanying him to the Stripes gas station. Gonzalez further testified that Villarreal threatened her shortly after Officer Camacho arrived at the Stripes and instructed her to "grab the stuff." Gonzalez also testified that the magistrate judge granted her an emergency protective order from Villarreal, as a result of him assaulting her. While the evidence in this case may support Gonzalez's contention that Villarreal

8

assaulted her on the evening of March 12, 2010, the jury nevertheless could have reasonably weighed that evidence and found that the assault did not relate to Gonzalez's decision to possess the gun and the drugs upon Officer Camacho's arrival. Furthermore, we defer to the jury's credibility determination regarding whether they believed Gonzalez's testimony that Villarreal had threatened to kill her if she did not "grab the stuff" in the car. After considering the entire body of evidence in a neutral light, we hold that the jury's adverse finding on Gonzalez's affirmative defense was not so against the great weight and preponderance of that evidence to be manifestly unjust. *See id.* at 671; *Meraz*, 785 S.W.2d at 155.

### 3. Summary

We hold that the evidence is legally and factually sufficient to support the jury's adverse finding against Gonzalez's affirmative defense claim of duress. We overrule Gonzalez's sole issue.

### III. CONCLUSION

We affirm the trial court's judgment.

GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed the
14th day of April, 2016.